UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
ARMANDO GONZALEZ and OLIVIA
GONZALEZ, his wife,

        Plaintiffs,

    -against-

GOTHAM ORGANIZATION INC.,
GOTHAM CONSTRUCTION
COMPANY LLC, TJM INC. LLC, TJM
DRILLING TOOLS AND EQUIPMENT
INC., THE LAQUILA GROUP INC.,
ABC CORP. 1-9 (said names being
fictitious, real names unknown), and
JOHN DOES 1-10 (said names being
fictitious, real names unknown),

        Defendants.
-----------------------------------------------x
TJM INC. LLC and TJM DRILLING
TOOLS AND EQUIPMENT INC.,

        Third-Party Plaintiffs,

    -against-

NICHOLSON CONSTRUTION
COMPANY,

        Third-Party Defendant.
-----------------------------------------------x

**MEMORDANUM AND ORDER**
Case No. 16-CV-607 (FB) (ST)

1

```
-------------------------------------------------x
```
GOTHAM ORGANIZATION INC.
GOTHAM CONSTRUCTION
COMPANY LLC, THE LAQUILA
GROUP INC., and NICHOLSON
CONSTRUCTION COMPANY,

              Third-Party Plaintiffs,

     -against-

TIBBAN MANUFACTURING, INC.,
and MUDPUPPY INTERNATIONAL,
as successor to Tibban Manufacturing,
Inc.,

           Third-Party Defendants.
```
-------------------------------------------------x
```

**BLOCK, Senior District Judge:**

Armando Gonzalez was injured by a piece of equipment at a construction site.   He has sued, among others, the equipment supplier, TJM Inc. LLC and TJM Drilling Tools and Equipment (collectively, "TMJ").   Jurisdiction is premised on diversity.

TJM now moves for summary judgment on all Gonzalez's claims based on the lack of a legal duty.   In addition, it moves for summary judgment on its indemnification claim against Gonzalez's employer, Nicholson Construction Company ("Nicholson").   For the following reasons, the motions are granted in part and denied in part.

# I

Gonzalez worked as an operating engineer for Nicholson.   In the spring on 2014, he was working on a construction project at the Brooklyn Academy of Music.   Gotham Construction Company LLC ("Gotham") was the general contractor at the site.   The Laquila Group Inc. ("Laquila") was the excavation, foundation and concrete subcontractor.   Laquila, in turn, subcontracted with Nicholson.

In carrying out its obligations, Nicholson leased equipment from TJM Inc. LLC and TJM Drilling Tools and Equipment Inc. (collectively, "TJM").   At issue here is a piece of equipment known as a "mudpuppy," which is used to remove stones, gravel, sand and other debris resulting from an excavation.   Pursuant to the lease agreement, TJM agreed to supply the mudpuppy, to provide training to Nicholson employees, and to repair the mudpuppy when needed.   For its part, Nicholson agreed to let only trained employees use the machine, and to perform routine maintenance.   TJM delivered the mudpuppy to the jobsite on March 31, 2014, and one of its employees, Chuck Coffindaffer, set up the machine and provided training.   Nicholson did not allow Gonzalez to attend the training because he had already learned how to operate the machine on a previous construction project.

TJM responded to an unspecified repair request on April 10, 2014.   For

3

more than a month thereafter, the mudpuppy operated without incident.   However, on May 14, 2014, Gonzalez was standing in front of the machine when one of its hoses dislodged and struck him in the head.   Neither TJM nor the mudpuppy's manufacturer was aware of any prior incidents where a hose had become dislodged.   In a post-accident investigation, Coffindaffer determined that the machine had become clogged due to improper cleaning, while Nicholson's safety manager opined that the mudpuppy's hose was loosened when Nicholson employees moved it at the jobsite.

Gonzalez and his wife sued Gotham, Laquila, and TJM.   TJM then filed a third-party complaint seeking indemnification from Nicholson, while Gotham and Laquila filed a third-party complaint against the mudpuppy's manufacturer, Tibban Manufacturing, Inc., as well as its successor-in-interest, Mudpuppy International.[1]

## II

Gonzalez asserts claims for violations of sections 200, 240, and 241(6) of New York's Labor Law (collectively, "Labor Law claims"), and for common-law negligence.   TJM seeks summary judgment on all those claims, as well as on its indemnification claim against Nicholson.    The Court addresses each in turn.

---

[1] Gonzalez presumably did not sue Nicholson directly because of the exclusive remedy provision of New York's Workers' Compensation Law.   *See* N.Y. Workers' Comp. Law § 11.

A.    **Labor Law Claims**

The statutes invoked by Gonzalez impose liability on those with the

authority to control activities at a jobsite.    *See Pacheco v. S. Bronx Mental Health*

*Council, Inc.*, 579 N.Y.S.2d 49, 50 (1st Dep't 1992) ("An implicit precondition to

the duty to provide a safe place to work under the Labor Law §§ 200 *et seq.* is that

the party charged with the responsibility have the authority to control the activity

bringing about the injury to enable it to avoid and correct an unsafe condition.").

TJM argues that, as the lessor of equipment, it had no such authority.    The record

supports that contention and Gonzalez offers no response.    Accordingly, TJM's

motion for summary judgment on the Labor Law claims is granted.

B.    **Common-Law Negligence**

A claim for common-law negligence is not limited to those with the

authority to control a jobsite.    However, it still depends on the existence of a duty.

"Although juries determine whether and to what extent a particular duty was

breached, it is for the courts first to determine whether any duty exists."    *Darby v.*

*Compagnie Nat'l Air France*, 96 N.Y.2d 343, 347 (2001).

All agree that TJM's duties arise out of its lease agreement with Nicholson.

"[A] contractual obligation, standing alone, will generally not give rise to tort

liability in favor of a third party."    *Espinal v. Melville Snow Contractors, Inc.*, 98

N.Y.2d 136, 138 (2002). However, the New York Court of Appeals has identified

5

three exceptions to that general rule:

> (1) where the contracting party, in failing to exercise reasonable care in the performance of his duties, launches a force or instrument of harm; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties; and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely.

*Id.* at 140 (internal quotation marks, alteration, and citations omitted).

The second exception does not apply because Gonzalez was not even aware of TJM's contractual obligations.   The third does not apply because TJM clearly did not "entirely displac[e]" Nicholson's duties.   In *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579 (1994), the New York Court of Appeals found a duty because the contract between a maintenance company and a hospital showed that the maintenance company "was to become the sole privatized provider for a safe and clean hospital premises." *Id.* at 589.   By contrast, TJM did not agree to take on *any* duties with respect to the premises.   Even with respect to the mudpuppy, Nicholson retained the duties to maintain the machine and see that it was used only by qualified employees.

Thus, the question becomes whether TJM "launche[d] a force or instrument of harm."   In *Espinal*, the Court of Appeals held that launching a force or instrument of harm was equivalent to creating or exacerbating a

6

dangerous condition:    "A [contractor] who 'creates or exacerbates' a

harmful condition may generally be said to have 'launched' it.

Exacerbating or creating a dangerous condition may be a more pedestrian—

or less elegant—description than launching a force or instrument of harm,

but in practical terms the criteria are the same."    98 N.Y.2d at 142-43.

TJM argues that its only duty was to provide the mudpuppy.    But

that duty, no matter how limited, necessarily included a duty to provide a

*safe* machine.    TJM argues that the mudpuddy was in perfect condition, but

Gonzalez responds that TJM failed "in properly securing the hoses and

adding secondary restraints" (known as "whip checks") to the machine.

Pls'. Mem. of Law 9.[2]

The failure to include a safety feature can, at least potentially, render a

product defective and subject anyone in the chain of its distribution to

liability.   *See Scarangella v. Thomas Built Buses, Inc.*, 93 N.Y.2d 655, 659

(1999) ("A defectively designed product is one which, at the time it leaves

the seller's hands, is in a condition not reasonably contemplated by the

ultimate consumer and is unreasonably dangerous for its intended use."

(internal quotation marks omitted)).    TJM offers many reasons why the

---

[2]Gonzalez further claims that TJM was negligent in failing to provide training.   It is undisputed, however, that TJM did provide training but that Nicholson did not allow Gonzalez to attend.

7

failure to include whip checks did not render the mudpuppy defective—for example, that it was not foreseeable that the hose could come loose during normal operation, and that the accident resulted from TJM's and/or Gonzalez's failure to clean out the hose—but those are arguments for a properly instructed jury; they do not negate the duty to provide a safe product.

In sum, the Court holds that TJM owed a duty to provide the mudpuppy in a reasonably safe condition, and that Gonzalez's claim that it failed to do so presents genuine questions of fact.   Accordingly, TJM's motion for summary on that claim is denied.

## C.    Indemnification

The lease agreement between TJM and Nicholson provides that Nicholson will indemnify TJM "from and against any and all liability for any claim, … arising out of (a) the negligent acts, errors or omissions of [Nicholson] . . . , including without limitation, Claims connected with or resulting from the . . . use of the Equipment by [Nicholson] and its employees[.]"   TJM's Mem. of Law, Ex. O.   It further provides, however, that no indemnity is required "for any Claims of or for the independent negligence of [TJM]," and that, in cases of joint negligence, "the indemnification and hold harmless obligations set forth above shall be

8

apportioned on a comparative fault basis." *Id.*   As there are issues of fact regarding TJM's and Nicholson's respective roles in the accident, TJM is not entitled to indemnification as a matter of law.   As always, indemnity must await a determination of liability.

### III

For the foregoing reasons, TJM's motion for summary judgment is granted with respect to Gonzalez's Labor Law claims and denied with respect to his common-law negligence claim and TJM's third-party claim for indemnification.

**SO ORDERED.**

 _/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 24, 2022

9