UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
ARMANDO GONZALEZ and OLIVIA
GONZALEZ, his wife,

                  Plaintiffs,

    -against-

GOTHAM ORGANIZATION INC.,
GOTHAM CONSTRUCTION
COMPANY LLC, TJM INC. LLC, TJM
DRILLING TOOLS AND EQUIPMENT
INC., THE LAQUILA GROUP INC.,
ABC CORP. 1-9 (said names being
fictitious, real names unknown), and
JOHN DOES 1-10 (said names being
fictitious, real names unknown),

                  Defendants.
-----------------------------------------------x
TJM INC. LLC and TJM DRILLING
TOOLS AND EQUIPMENT INC.,

                Third-Party Plaintiffs,

    -against-

NICHOLSON CONSTRUTION
COMPANY,

              Third-Party Defendant.
-----------------------------------------------x
GOTHAM ORGANIZATION INC.
GOTHAM CONSTRUCTION
COMPANY LLC, THE LAQUILA
GROUP INC., and NICHOLSON
CONSTRUCTION COMPANY,

**MEMORANDUM AND ORDER**

Case No. 16-CV-607 (FB) (ST)

1

Third-Party Plaintiffs,

-against-

TIBBAN MANUFACTURING, INC.,
and MUDPUPPY INTERNATIONAL,
as successor to Tibban Manufacturing,
Inc.,

Third-Party Defendants.

-----------------------------------------------x

*Appearances:*
*For the Plaintiff*:
WILLIAM A. BOCK
Gill & Chamas, LLC
655 Florida Grove Road
Woodbridge, New Jersey 07095

*For the Third-Party Plaintiff*:
ANDREW D. SHOWERS
McMahon, Martine & Gallagher, LLP
55 Washington Street, Suite 720
Brooklyn, NY 11201

*For the Defendants*
KIRSTEN L. MOLLOY
Ropers Majeski P.C.
750 Third Avenue, 25th Floor
New York, New York 10017

*For the Third-Party Defendant:*
DENNIS M. ROTHMAN
Lester Schwab Katz & Dwyer, LLP
100 Wall Street
New York, NY 10005

**BLOCK, Senior District Judge:**

This diversity tort action pertains to an injury to Plaintiff Armando Gonzalez

("Gonzalez") at a construction site in Brooklyn involving a piece of equipment

called a Mudpuppy.  Gonzalez and his wife brought claims for common-law

negligence and statutory liability under New York's Labor Law against general

contractor Gotham Construction Company LLC ("Gotham"),[1] subcontractor

Laquila Group Inc. ("Laquila"), and the equipment supplier, TJM Inc. LLC and

TJM Drilling Tools and Equipment (collectively, "TJM").  TJM filed a third-party

complaint seeking indemnification from Gonzalez's employer, Nicholson

Construction Company ("Nicholson"), while Gotham, Laquila, and Nicholson filed

a third-party complaint against the Mudpuppy's manufacturer, Tibban

Manufacturing, Inc., as well as its successor-in-interest, Mudpuppy International

(collectively, "Tibban Defendants").

This Court previously granted TJM's motion for summary judgment on

Gonzalez's New York Labor Law claims and denied it with respect to Gonzalez's

common-law negligence claim and TJM's third-party claim for indemnification

against Nicholson.  *See Gonzalez v. Gotham Org. Inc.*, No. 16-CV-607 (FB) (ST),

2022 WL 875066 (E.D.N.Y. Mar. 24, 2022).  There are now four motions for

summary judgment before the Court: (1) by Gonzalez on his statutory claims under

New York Labor Law § 241(6) against Gotham and Laquila ("Gotham

Defendants"); (2) by Gotham Defendants on Gonzalez's statutory and common-

law claims; (3) by Nicholson on TJM's third-party claims; and (4) by Tibban

Defendants on Gotham's, Laquila's, and Nicholson's third-party complaint seeking

---

[1] Gonzalez also named Gotham Organization, Inc. as a defendant.  Gotham argues that this defendant is incorrectly named and moves for summary judgment dismissing all claims against Gotham Organization, Inc.  Because Gonzalez does not oppose the motion, the Court grants it.

contribution and common law indemnification.  For the following reasons, Gonzalez's motion for summary judgment is denied, Gotham's and Laquila's motions are granted in part and denied in part, Nicholson's motion is granted in part and denied in part, and Tibban Defendants' motion is denied.

## I.    BACKGROUND

The following facts are taken from the pleadings, the parties' Rule 56.1 statements, and the supporting documentation.  The facts are undisputed unless otherwise noted.  The Court construes all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in that party's favor. *See LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 205 (2d Cir. 2005).

Gonzalez worked as an operating engineer for Nicholson at a construction site at the Brooklyn Academy of Music ("BAM Site" or "Project") located at 250 Ashland Place, Brooklyn, New York.  Gotham served as general contractor, or as Gotham describes itself, construction manager for the project.  To perform excavation, foundation, and concrete work, Gotham subcontracted with Laquila, which in turn subcontracted with Nicholson, Gonzalez's employer, to perform geotechnical supportive excavation work.

The alleged injury concerns the operation of a Mudpuppy, a piece of construction equipment used to remove stones, gravel, sand and other debris

4

resulting from an excavation.  The Mudpuppy at issue was manufactured by Tibban Defendants and rented to Nicholson by TJM.[2]

The incident occurred on May 17, 2014.  Gonzalez alleges that after starting the generator and engaging a pump, the four-inch, reinforced hose blew off the machine, and the end of the hose with the clamp struck Gonzalez in the head, resulting in a fractured vertebrae in his neck.  A post-accident investigation concluded that the direct cause appeared to be overpressure of the system, which caused the hose to break free.  Additionally, prior to the accident, there had been several instances where cones or hoses had blown off the Mudpuppy units or the Mudpuppy became clogged, which led to Nicholson scheduling repairs with TJM.

## II.    GONZALEZ'S CLAIMS AGAINST GOTHAM DEFENDANTS[3]

### A. Labor Law § 200 and common-law negligence

Gotham Defendants move for summary judgment on Gonzalez's Labor Law § 200 and common-law negligence claims.  Section 200 is a codification of the common-law duty imposed upon an owner or general contractor to maintain a safe construction site.  *Rizzuto v. L.A. Wenger Contracting Co.*, 91 N.Y.2d 343, 352

---

[2] At the time of the accident, there was also a second Mudpuppy unit on site owned by Nicholson.

[3] This section addresses the motions of both the Gotham Defendants and Gonzalez.

(1998).  Thus, these two claims are analyzed together.  *See Pina v. Dora Homes, Inc.*, No. 09-CV-1626 FB JMA, 2013 WL 359386, at *4 (E.D.N.Y. Jan. 29, 2013).

Broadly speaking, cases involving the general contractor's duty to maintain a safe construction site fall into two categories: (1) those involving injuries arising from the "manner in which the work is performed," so-called means and methods cases, and (2) those where the worker is injured as "a result of a dangerous or defective premises conditions at a work site," that is, where the defendant created the dangerous condition that caused the accident or had actual or constructive notice of the dangerous condition that caused the accident, so-called premises condition cases.  *See Ortega v. Puccia*, 866 N.Y.S.2d 323, 330 (2d Dep't 2008).

Since Gonzalez's injury was allegedly caused by a Mudpuppy, equipment supplied by his employer, this is a means and methods case.  *Compare id.* (injury arose from equipment provided by the plaintiff's employer, not by the defendants) *with Urb. v. No. 5 Times Square Dev., LLC*, 879 N.Y.S.2d 122 (1st Dep't 2009) (injury caused by a defective condition of the workplace).  For liability to attach in such cases, the owner or general contractor must have "the authority to control the activity bringing about the injury to enable it to avoid or correct an unsafe condition."  *See Russin v. Louis N. Picciano & Son*, 54 N.Y.2d 311, 317 (1981).  However, "mere general supervisory authority at a work site for the purpose of overseeing the progress of the work and inspecting the work product is insufficient

to impose liability under Labor Law § 200," *Ortega*, 866 N.Y.S.2d at 330, even when coupled with "notice of the allegedly unsafe manner in which the work was performed."  *Dennis v. City of New York*, 758 N.Y.S.2d 661 (2d Dep't 2003). While liability does not generally attach to the general contractor because "an owner or general contractor should not be held responsible for the negligent acts of others over whom the owner or general contractor had no direction or control," *see Lewis v. Lendlease (US) Constr. Lmb Inc.*, No. 18-CV-8662 (LJL), 2021 WL 5762419, at *13 (S.D.N.Y. Dec. 2, 2021), *reconsideration denied*, No. 18-CV-8662 (LJL), 2022 WL 343746 (S.D.N.Y. Feb. 4, 2022), "in the exceptional case where an owner or contractor actually exercises supervisory control over a subcontractor's work, liability may nonetheless be imposed."  *See Rapp v. Zandri Const. Corp.*, 569 N.Y.S.2d 994, 996 (3d Dep't 1991).

Gotham and Laquila contend that there is no evidence that Gotham supervised the means and methods of Gonzalez's work.  Opposing this motion, Gonzalez argues that Gotham and Laquila had sufficient authority to supervise or control his work to satisfy this claim.  Gonzalez primarily relies on the contractual language in the agreement between Gotham and the owner.

At issue is whether *mere possession* of contractual authority to direct and control the work is sufficient to trigger § 200 liability, or whether there must be evidence that the defendant *actually exercised* supervision and control over that

work.  Although New York courts are, in Judge Liman's recent characterization, "somewhat imprecise" in their articulations of the standard, "the law is clear" that there must be sufficient evidence to show that "the general contractor stepped into the shoes of the subcontractor (or at least shared its shoes) with respect to that work." *Lewis*, 2021 WL 5762419, at *13, n.10.

Indeed, the weight of authority establishes that evidence of "*exercise*[] [of] direct supervisory control over the manner in which the activity alleged to have caused the injury was performed," rather than mere possession of contractual authority, is necessary to trigger Section 200 liability.  *Burkoski v. Structure Tone, Inc.*, 836 N.Y.S.2d 130, 133 (1st Dep't 2007) (emphasis added); s*ee also Singh v. 1221 Ave. Holdings, LLC*, 8 N.Y.S.3d 129, 131 (1st Dep't 2015) ("the determination to be made is whether defendants exercised supervision and control over plaintiff's work"); *Lamela v. City of New York*, 560 F. Supp. 2d 214, 221 (E.D.N.Y. 2008), *aff'd*, 332 F. App'x 682 (2d Cir. 2009) (the defendant must "exercise[] some supervisory control over the operation"); *Singh v. Black Diamonds LLC*, 805 N.Y.S.2d 58, 60 (2005) ("liability can only be imposed if defendant exercised control or supervision over the work").

Accordingly, Gonzalez fails to proffer evidence that Gotham or Laquila "stepped into the shoes" of or exercised control or supervision over Nicholson. Contractual rights to generally supervise the work are not only insufficient to

8

impose § 200 liability, *see Austin v. Consol. Edison, Inc.*, 913 N.Y.S.2d 684 (2d Dep't 2010), but Gotham and Laquila also contractually passed those rights downstream, eventually to Gonzalez's employer Nicholson.  While Gonzalez argues that Gotham's project managers were expected to perform walkthroughs of the site, review logs and reports, and look for unsafe activities, these facts "simply indicate[] [the general contractor's] general supervision and coordination of the work site and [are] insufficient to trigger liability." *Singh*, 805 N.Y.S.2d at 60.  As Gonzalez himself stated in an uncontroverted deposition, only Nicholson employees gave him direction about how or where to perform his work.  Gonzalez thus fails to "raise an issue as to whether [the defendant's] own negligence contributed to plaintiff's accident." *Burkoski*, 836 N.Y.S.2d at 134.

Similarly, there is no evidence that Laquila exercised supervisory authority or control.  It is undisputed that Laquila did not inspect Nicholson's work. Accordingly, because "there is no evidence that Defendants controlled the manner in which [plaintiff] performed his work, they are not liable under section 200" or common-law negligence.  *See Pina*, 2013 WL 359386, at *3–4.  As discussed further below, Laquila's status as a "statutory agent" is relevant to Gonzalez's claims under §§ 240(1) and 241(6) but not, contrary to Gonzalez's argument, to his negligence claims, where a statutory agent is not "vicariously liable for the negligence of a downstream contractor." *DeMaria v. RBNB 20 Owner, LLC*, 12

N.Y.S.3d 79, 82 (1st Dep't 2015) (subcontractor not liable for § Section 200 or common-law negligence claims but is subject to liability under Labor Law § 241(6) as a statutory agent).

## B. *Respondeat Superior*

Gotham Defendants move for summary judgment on Gonzalez's claim of *respondeat superior*.  Under this doctrine, an employer is answerable for the torts of an employee who acts within the scope of his or her employment.  *See Rausman v. Baugh*, 682 N.Y.S.2d 42, 43 (2d Dep't 1998).  Gonzalez does not argue in opposition and appears to be abandoning this claim.  Because the record does not support the argument that either Gotham or Laquila employees contributed to the accident, Gotham's and Laquila's motion is granted as to this claim.

## C. Labor Law § 240(1) Claim

Gotham Defendants move for summary judgment on Gonzalez's claim under New York Labor Law § 240(1), which imposes a non-delegable duty upon owners and general contractors and their agents to provide safety devices necessary to protect workers from risks inherent in elevated work sites.  *See Von Hegel v. Brixmor Sunshine Square, LLC*, 115 N.Y.S.3d 712, 713 (2d Dep't 2020).  Gonzalez does not oppose Gotham Defendants' motion for summary judgment on his § 240(1) claim – and for good reason.  To give rise to liability under § 240(1), the plaintiff's injury must "be the direct consequence of the application of the force

of gravity to an object or person."  *Gasques v. State*, 15 N.Y.3d 869, 870 (2010).

Injuries caused by the "use of high pressure," *see Joseph v. City of New York*, 38

N.Y.S.3d 556, 557 (1st Dep't 2016), or objects "propelled by the kinetic energy of

the sudden release of tensible stress," *Medina v. City of New York*, 929 N.Y.S.2d

582, 585 (1st Dep't 2011), are not the result of the force of gravity within the

meaning of the statute.

### D. Labor Law § 241(6) Claims

Both Gonzalez and Gotham Defendants move for summary judgment on

Gonzalez's Labor Law § 241(6) claim, which imposes a non-delegable duty on

owners, contractors, and their agents to "provide reasonable and adequate

protection and safety to the persons employed therein" and "to comply with the

specific safety rules and regulations promulgated by the Commissioner of the

Department of Labor."  *See St. Louis v. Town of N. Elba*, 16 N.Y.3d 411, 413

(2011) (internal quotation marks omitted).  Laquila is a statutory agent of Gotham,

as Laquila had "the authority to supervise and control the work giving rise to the

obligations imposed by these statutes," which it delegated to another subcontractor.

*See Nascimento v. Bridgehampton Const. Corp.*, 924 N.Y.S.2d 353, 356 (1st Dep't

2011) (collecting cases) ("Subcontractors have been held to be the statutory agents

of general contractors in situations in which provisions of the subcontracts

explicitly granted supervisory authority."); *see also DeMaria*, 12 N.Y.S.3d at 82.

11

Unlike § 200 negligence liability, liability under § 241(6) does not depend on the defendant's exercise of supervision or control over the work or the work site.  *See St. Louis*, 16 N.Y.3d at 413.  Instead, a plaintiff must show that a (1) specific, applicable Industrial Code regulation was violated and (2) that the violation caused the complained-of injury.  *See Cappabianca v. Skanska USA Bldg. Inc.*, 950 N.Y.S.2d 35, 41 (1st Dep't 2012) (citing *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 501-02 (1993)).  Gonzalez proffers several sections of the New York Industrial Code as the bases for liability under § 241(6), which the Court will consider in turn.[4]

## 1) 12 NYCRR § 23-1.5(c)(3)

Section 23–1.5(c)(3) of the Industrial Code requires that "[a]ll safety devices, safeguards and equipment in use shall be kept sound and operable, and shall be immediately repaired or restored or immediately removed from the job site if damaged."  The latter provision, requiring equipment to be immediately repaired or restored or immediately removed from the job site if damaged, is sufficiently

---

[4] It is of no moment that Gonzalez did not cite particular provisions of the Industrial Code in his complaints.  *See Kelleir v. Supreme Indus. Park*, 740 N.Y.S.2d 398, 400 (2d Dep't 2002).  Indeed, a plaintiff may cite Industrial Code provisions for the first time in opposition to a motion for summary judgment if the allegation "involve[s] no new factual allegations, raise[s] no new theories of liability, and cause[s] no prejudice to the defendants."  *Id.*  However, the Court deems abandoned his reliance on 12 NYCRR § 23-9.2 (b)(1), which is, in any event, "merely a general safety standard that does not give rise to a nondelegable duty under the statute" and hence cannot provide a basis for a § 241(6) claim.  *See Gonzalez v. Perkan Concrete Corp.*, 975 N.Y.S.2d 65, 69 (2d Dep't 2013) (quoting *Hricus v Aurora Contrs., Inc.*, 883 N.Y.S.2d 61, 1005 (2d Dep't 2009)).

specific to trigger § 241(6) liability.  *See Pina v. Dora Homes, Inc.*, No. 09-CV-1626 FB JMA, 2013 WL 359386, at *6 (E.D.N.Y. Jan. 29, 2013); *see also Perez v. 286 Scholes St. Corp.*, 22 N.Y.S.3d 545, 547 (2d Dep't 2015) (accord).

Gotham Defendants assert that there was no evidence that the Mudpuppy was "damaged" or inoperable.  They argue that Nicholson promptly reported and fixed issues with the Mudpuppy, as required.  Conversely, Gonzalez asserts that the repeated incidents involving clogs and hoses blowing off the Mudpuppy units indicates that the machines were not sound or operable.  Gonzalez also points to expert opinion that failures to impose secondary restraints and address the recurring hose issues led to the defective conditions.  In sum, Gonzalez presents evidence that the Mudpuppy was not properly repaired, restored, or removed from the job site, while Gotham Defendants cite evidence that, because Nicholson had reported every issue, the Mudpuppy was not damaged, and there was no violation of the provision.

Accordingly, there are triable issues of material fact as to whether the Mudpuppy was properly repaired, restored, or removed if damaged.  *See, e.g.*, *Lopez v. City of New York*, 160 N.Y.S.3d 585 (1st Dep't 2022) (denying summary judgment when defendants failed to show that equipment was "not defective."); *Sancino v. Metro. Transportation Auth.*, 124 N.Y.S.3d 534, 535 (1st Dep't 2020) (triable issue of fact as to whether wheeled dumpster was not defective).

**2) 12 NYCRR § 23-9.2(a)**

Gonzalez also asserts a violation of § 23-9.2(a).  The New York Court of Appeals has held that the third sentence of this provision – providing, "[u]pon discovery, any structural defect or unsafe condition in [power-operated] equipment shall be corrected by necessary repairs or replacement" – is sufficiently concrete to permit recovery under § 241(6).  *See Misicki v. Caradonna*, 12 N.Y.3d 511, 520-21 (2009).  Therefore, "an employee who claims to have suffered injuries proximately caused by a previously identified and unremedied structural defect or unsafe condition affecting an item of power-operated heavy equipment or machinery has stated a cause of action."  *Id.* at 521.  Recovery requires an employer to have "actual notice of the structural defect or unsafe condition."  *Marino v. Manning Squires Hennig Co.*, 173 N.Y.S.3d 788, 790–91 (4th Dep't 2022).  Importantly, "even if the non-supervisory owner or general contractor was not aware of the defect or unsafe condition . . . [i]f the employer's negligence is established, [the owner or contractor] would be vicariously liable for plaintiff's injuries without regard to fault*."  See Pina*, 2013 WL 359386, at *5.

There is a triable issue of material fact as to whether a previously identified and unremedied structural defect or unsafe condition caused Gonzalez's injury.  Gotham Defendants argue that Nicholson complied with the provision, stating that upon discovery of issues with the Mudpuppy, Nicholson notified TJM to arrange

necessary repairs to correct the issues with the Mudpuppy up to the accident, which corrected the defects or unsafe conditions.  Gonzalez argues that Nicholson knew of several issues with the Mudpuppy units – including hoses and cones blowing off the other unit and a clog in the unit that injured Gonzalez – but failed to correct the defect or implement necessary safety measures, as evidenced by the recurring issues, which led to Gonzalez's injury.  Given the evidence presented, it is "for the jury to determine whether the negligence of some party to, or participant in, the construction project caused plaintiff's injury."  *Rizzuto v. L.A. Wenger Contracting Co.*, 91 N.Y.2d 343, 350 (1998); *see also Misicki*, 12 N.Y.3d at 521 (it "remain[s] for a jury to decide whether a violation [of 12 NYCRR 23–9.2(a)], in fact, occurred; and whether the negligence of some party to, or participant in, the construction project caused plaintiff's injuries").

### III.   TJM'S THIRD-PARTY CLAIMS AGAINST NICHOLSON

Nicholson moves for summary judgment on TJM's third-party complaint's (1) common-law contribution and indemnity claims and (2) contractual indemnity and failure to procure insurance claims.

#### A. Common-law contribution and indemnity claims

Nicholson argues that Section 11 of the Workers' Compensation Law bars common-law contribution and indemnity claims.  Specifically, an employer may be liable to third parties for indemnification or contribution when the injured

employee suffers a "grave injury." *Alulema v. ZEV Elec. Corp.*, 90 N.Y.S.3d 171 (1st Dep't 2019) (citing N.Y. Workers' Comp. Law § 11). As TJM does not offer any evidence that Gonzalez suffered a "grave injury" within the meaning of the statute or otherwise respond to this argument, Nicholson's motion for summary judgment is granted.

## B. Contractual claims for indemnity and failure to procure insurance

TJM claims that Nicholson owes it contractual indemnity for Gonzalez's accident under a rental agreement and further alleges that Nicholson breached the agreement by not procuring insurance for TJM. The parties dispute whether a rental agreement covered Gonzalez's accident. "It is generally a question of fact for the jury whether or not a contract actually exists." *Townsquare Media, Inc. v. Regency Furniture, Inc.*, No. 21-CV-4695 (KMK), 2022 WL 4538954, at *16 (S.D.N.Y. Sept. 28, 2022) (quoting *Pereida v. Wilkinson*, 141 S. Ct. 754, 765 n.6 (2021)).

The sole dispute is whether a rental agreement executed by Nicholson[5] on January 17, 2014, for a Mudpuppy with serial number ("SN") 10312TT01 that was initially shipped to a project on Greenwich Street in Manhattan is applicable to the

---

[5] TJM has been unable to provide a version of the January 17, 2014, rental agreement executed by both parties, although TJM owner and President Thomas J. McKelvy stated that he believed such a version existed.

Mudpuppy, and hence the accident, at issue.[6]  TJM contends that Nicholson rented this Mudpuppy for a project in Manhattan, transported it to its yard in Pennsylvania, and then moved it to the BAM site, where it eventually injured Gonzalez.  Accordingly, it argues, the January 17, 2014, rental agreement for Mudpuppy SN 10312TT01 applies to the Mudpuppy at issue, was in effect for Gonzalez's injury at BAM, and provides the contractual basis for its claims.

The factual landscape surrounding the rental agreement is complicated by the presence of two Mudpuppy units – one that Nicholson rented from TJM and a second it bought from TJM – at the BAM site on the day of Gonzalez's injury, as well as inconsistent identification numbers across various documents.  However, it is at least uncontroverted that non-party Richard Goettle Construction ("Goettle") owned the Mudpuppy at issue and leased it to TJM, which in turn leased the Mudpuppy to Nicholson.  Nicholson's repair logs show the rented Mudpuppy that injured Gonzalez arriving at BAM on March 31, 2014; the second Mudpuppy that Nicholson owned arrived later, on April 22, 2014.

While Nicholson does not explicitly deny that Mudpuppy SN 10312TT01 covered by the January 17, 2014, rental agreement was the Mudpuppy that injured Gonzalez, it argues that the January 17, 2014, agreement applies only to the

---

[6] There is a second rental agreement that refers specifically to the BAM site but is dated May 20, 2014, after the accident, and signed only by TJM.  Confusingly, this second rental agreement refers to a different serial number than the first one.

Mudpuppy's use at the project site in Manhattan and thus did not cover Gonzalez's accident at BAM.[7]  To this end, Nicholson makes three arguments: (1) only Nicholson, but not TJM, signed the January 17 rental agreement; (2), the agreement applies solely to injuries arising at the Manhattan site, not at BAM; and (3) the modification provision, which states that any changes "must be evidenced in writing signed by the Lessor and Customer," precludes coverage of Gonzalez's accident at BAM because the parties did not modify the agreement.

Each of these arguments must fail.  First, the suggestion that the rental agreement would not be enforceable because it was unsigned by TJM – the party seeking to enforce the agreement – is without legal merit: under New York law, an enforceable contract exists "where the non-signing party has accepted [the] written agreement and has acted upon it."  *Argo Marine Sys., Inc. v. Camar Corp.*, 755 F.2d 1006, 1010–11 (2d Cir.1985) (internal quotations omitted).

Second, to argue that the Mudpuppy was intended to only be used in Manhattan, Nicholson points to a portion at the top of the rental agreement that states, "[t]he 'Lessee' agrees to pay Lessor as a rental for the following described equipment / to be used at: 133 Greenwich Street."  However, this language does

---

[7] To the extent that Nicholson suggests that there is any ambiguity about whether Mudpuppy SN 10312TT01 injured Gonzalez by emphasizing testimony by TJM owner and President Thomas McKelvy about the two rental agreements pertaining to different Mudpuppy units, any ambiguity would be resolved in TJM's favor at this stage, and trial would determine this question of fact.

not create a contractual condition – *i.e.*, that the Mudpuppy must only be used at the 133 Greenwich Street location – but rather merely describes the equipment. Where language "is descriptive and precatory[,] it does not create a contractual obligation." *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712, 729 (S.D.N.Y. 1989). Indeed, there is no provision stating that the Mudpuppy is to be used only at one site. More fundamentally, if the Court accepted the argument that Nicholson could move the Mudpuppy from the only site where it was permitted to use it, continue using the Mudpuppy, injure a worker, and then shirk from the duties it had undertaken, the Court would violate a cardinal rule of contract law: "[w]hen a party to a contract has breached the agreement . . . it may not later rely on that breach to its advantage." *Castle Creek Tech. Partners, LLC v. CellPoint Inc.*, No. 02 CIV. 6662 (GEL), 2002 WL 31958696, at *7 (S.D.N.Y. Dec. 9, 2002).

Third, and finally, Nicholson argues that the parties needed to modify the agreement to cover the Mudpuppy's use at the BAM site but failed to do so. Again, the rental agreement does not limit Nicholson's use of the Mudpuppy to Manhattan. In fact, it states, "if Lessee retains said property after the expiration of said term, such retention shall be constructed as a continuance of this lease, at the same rental, and under the same terms, until said property is returned to the Lessor," and the indemnification provision broadly covers claims arising from "use of the Equipment by Customer and its employees, agents and representative."

19

To emphasize, if TJM is correct, *Nicholson* moved the Mudpuppy to Brooklyn, where it injured Gonzalez.  Nicholson cannot now claim that in so doing, it is no longer subject to the terms of the rental agreement.  Summary judgment is denied.

## IV.   GOTHAM'S THIRD-PARTY COMPLAINT AGAINST TIBBAN

Finally, third-party defendants Tibban Defendants seek summary judgment for lack of personal jurisdiction on Gotham's, Laquila's, and Nicholson's third-party complaint for contribution and common law indemnification.  Tibban Defendants are non-New York corporations that manufactured the Mudpuppy at issue.  Personal jurisdiction requires that the defendant be subject to jurisdiction under New York law as well as the Due Process Clause of the U.S. Constitution.[8] *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014).  Only the constitutional limit on personal jurisdiction is at issue here.

Under the Due Process analysis, New York may exercise jurisdiction over nonresident Tibban Defendants if three conditions are met: (1) the defendant must have purposefully availed itself of the privilege of conducting activities within the

---

[8] Tibban Defendants do not argue that New York lacks personal jurisdiction under a provision of its long-arm statute, CPLR § 302(a)(3)(ii), and have thus waived the argument.  However, the Court states that each of the five elements under the long-arm statute could be met.  *See LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000) (laying out elements).  As is pertinent here, to minimize conflict with the U.S. Constitution's Due Process Clause, New York courts generally apply § 302(a)(3)(ii)'s "reasonable expectation" requirement under New York statute in a manner consistent with U.S. Supreme Court precedent, which is discussed *infra*.  *RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 540 (S.D.N.Y. 2018).

forum State or have purposefully directed its conduct into the forum State; (2) the plaintiff's claim must arise out of or relate to the defendant's forum conduct; and (3) the exercise of jurisdiction must be reasonable under the circumstances." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019). Tibban Defendants focus exclusively on the first prong, the minimum contacts inquiry. While Gotham bears the burden of providing a factually supported *prima facie* showing that personal jurisdiction exists, *see Capitol Recs., LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 356 (S.D.N.Y. 2009), all evidence is construed in the light most favorable to Gotham, and all doubts resolved in its favor. *See Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990).

Although the law around minimum contacts in this context is somewhat "unsettled," *see RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 544 (S.D.N.Y. 2018), it is nonetheless clear that courts must evaluate the totality of circumstances to determine whether "minimum contacts necessary to support such jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). While the placement of one product into the stream of commerce without "something more" directed to the forum state is insufficient, personal jurisdiction can be established with any number of additional connections to the forum state,

such as the manufacturer establishing channels for providing advice to customers, marketing the product through a distributor who has agreed to serve as the sales agent in the forum State, or serving, directly or indirectly, the market for its product in other States. *See State Farm Fire & Cas. Co. v. Swizz Style, Inc.*, 246 F. Supp. 3d 880, 890–91 (S.D.N.Y. 2017) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 128 n.7 (2014)).

Tibban Defendants principally contend that they lacked any physical presence in, conducted any operations in, or directed any conduct to New York and did know that the Mudpuppy units would end up in New York, since Tibban sold the Mudpuppy to a Pennsylvania-based entity.

The Court finds that Gotham has proffered sufficient evidence that, if credited by the trier, would suffice to establish personal jurisdiction over Tibban Defendants. Specifically, Gotham offers the following evidence regarding Tibban Defendants' contacts with New York, including: (1) Tibban had actual knowledge that the Mudpuppy that injured Gonzalez was in New York before the accident; (2) Tibban contractually required its dealers and distributors, including TJM, to only use genuine Mudpuppy parts and to order parts through Tibban, including for Mudpuppy units located in New York; (3) TJM emailed Tibban requesting new parts *specifically for the BAM site in New York*; (4) James A. Tibban ("James Tibban") stated that he was aware that Mudpuppy units would be used in New

York, Tibban Dep. 102:23-25; (5) James Tibban stated that he "constantly got feedback from users of the machines," which presumably includes users in New York, *id.* at 149:19–23; and (6) Tibban provided extensive training to dealer-distributors who serviced the New York market, including TJM mechanic Chuck Coffindaffer, who was frequently at the BAM site.  Significantly, Gotham also cites Coffindaffer's statement that TJM "brought in [manifold and cones] from MudPuppy, like flew it in overnight," *see* Coffindaffer Dep. 202:23-203:5, which could establish that Tibban *shipped parts directly to New York* before the accident, although Tibban disputes this conclusion.

Together, these facts could establish the "something more" needed to establish personal jurisdiction.  While foreseeability that a product may end up in New York is alone insufficient to establish jurisdiction, *Candelario v. Bobst N. Am., Inc.*, No. 18-CV-6281 CJS, 2019 WL 4112179, at *6 (W.D.N.Y. Aug. 29, 2019), Tibban had actual knowledge of the Mudpuppy's presence in New York before the accident.  Moreover, Tibban's contractual requirement that distributors operating in New York like TJM must order from Tibban establishes Tibban's efforts "to serve, directly or indirectly, the market for its product" in New York. *Daimler AG*, 571 U.S. at 128 n.7.  Critically, Tibban had every expectation of "reasonably being haled into [New York] court" because it knew that the Mudpuppy that ultimately injured Gonzalez was at the BAM site, knew that its

products would be used in New York, and was on emails requesting that Tibban

provide – and perhaps actually provided – additional parts to New York prior to

the accident.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297

(1980).  Finally, if established, Tibban's direct shipment of parts to New York

would be further evidence of purposeful availment.

Although the Supreme Court has "reduced" specific jurisdiction in recent

cases, s*ee State Farm Fire & Cas. Co. v. Swizz Style, Inc.*, 246 F. Supp. 3d 880,

889 (S.D.N.Y. 2017), the facts at issue are similar to those where other courts have

found personal jurisdiction.  In *Swizz Style*, the court found jurisdiction where, like

here, the manufacturer was "aware of and 'targeted' New York specifically" and

"might reasonably have suspected it could be called upon to answer for any"

product-related issues.  *Id.* at 892.  And in *UTC Fire & Sec. Americas Corp. v.*

*NCS Power, Inc.*, 844 F. Supp. 2d 366 (S.D.N.Y. 2012), the court found personal

jurisdiction where the manufacturer had "presumptive knowledge" of sales to New

York.  *Id.* at 376.  Accordingly, summary judgment is inappropriate, and the jury

will determine whether personal jurisdiction exists.[9]  *See Marine Midland Bank,*

---

[9] The Court must also determine whether the "assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice-that is, whether it is reasonable under the circumstances of the particular case," an inquiry for which the Court must evaluate five factors. *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir.1996).  However, "[w]here a plaintiff makes the threshold showing of the minimum contacts required for the first test, a defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *UTC Fire*, 844 F. Supp. 2d at 377 (quoting *Bank*

*N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) (plaintiff must establish jurisdiction by a preponderance of evidence at trial).

Finally, in the declaration of Tibban's counsel Dennis Rothman, Esq., Tibban argues that Mudpuppy International ("MI"), Tibban's successor-in-interest, should be dismissed because the Clerk did not issue a third-party summons as to MI, and MI was never served with process in this action. The Court will not entertain this eleventh-hour argument: after the second amended third-party complaint properly named MI, counsel for MI and Tibban wrote a letter to the Court without mentioning insufficient process. Even if MI had any legitimate grounds for an objection, its appearances and participation in this action for the last *three-and-a-half-years* waive it. *See Bisesto v. Uher*, No. 19-CV-1678 (KMK), 2019 WL 2537452, at *2, n.1 (S.D.N.Y. June 20, 2019) (collecting cases regarding waiver of objection to service of process).

## V. CONCLUSION

For the foregoing reasons, Gotham Defendants' motion for summary judgment on Gonzalez's Labor Law § 200 and common-law negligence claims, *respondeat superior* claim, Labor Law § 240(1) claim, and Labor Law § 241(6) claim based on 12 NYCRR § 23-9.2 (b)(1) is granted, and these claims, as well as

---

*Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002)). Tibban Defendants make no such showing.

25

Gotham Organization, Inc., are dismissed.  However, Gonzalez's and Gotham

Defendants' motions for summary judgment on Gonzalez's Labor Law § 241(6)

claims under 12 NYCRR §§ 23-1.5(c)(3) and 23-9.2(a) are denied and will proceed

to trial.

Nicholson's motion for summary judgment on TJM's third-party claims is

granted as to common-law contribution and indemnity claims and denied as to

contractual indemnity and failure to procure insurance claims.

Tibban Defendants' motion for summary judgment as to Gotham's second

third-party claims for contribution and common law indemnification is denied.

The trial is scheduled to begin on October 16, 2023.  Based on the foregoing,

and the Court's prior rulings on TJM's motion for summary judgment, trial will

determine: (1) whether TJM failed to provide the Mudpuppy in a reasonably safe

condition for Gonzalez's common-law negligence claim against TJM, (2) whether

the Mudpuppy was immediately repaired or restored or immediately removed from

the job site if damaged and whether any structural defect or unsafe condition in the

Mudpuppy was corrected by necessary repairs or replacement upon discovery for

Gonzalez's Labor Law § 241(6) claims against Gotham Defendants; (3) whether

the Mudpuppy rental agreement between TJM and Nicholson covered Gonzalez's

accident for TJM's contractual claims for indemnity and failure to procure

insurance against Nicholson; (4) TJM's and Nicholson's respective roles in the

accident for TJM's contractual claims against Nicholson; and (5) whether there is personal jurisdiction over Tibban Defendants.

**SO ORDERED.**

        _/S/ Frederic Block_____
        FREDERIC BLOCK
        Senior United States District Judge

Brooklyn, New York
September 25, 2023